638 N.W.2d 405 (2002)
In re Hon. Gerard TRUDEL, Judge, Twenty-Fourth District Court, Allen Park, Michigan.
Docket No. 120741.
Supreme Court of Michigan.
January 23, 2002.
*406 The Judicial Tenure Commission has reached an agreement with the respondent judge, the Honorable Gerard Trudel, under which he consented to the Commission's findings of fact, conclusions of law, and recommendation for discipline, as set forth below. Following our de novo review, we adopt the following findings of fact and conclusions of law as our own:
1. The respondent is a judge of the Twenty-Fourth District Court in Allen Park, Michigan, and was the chief judge at all relevant times mentioned.
2. As a judge, the respondent is subject to all of the duties and responsibilities imposed on him by the Michigan Supreme Court, and is subject, at a minimum, to the standards for discipline set forth in MCR 9.104 and MCR 9.205.
3. The respondent admits that he committed the following acts, that such acts constitute judicial misconduct, and that such conduct was wrongful:
A. The respondent engaged in conduct which reasonably could be viewed as sexually offensive toward a subordinate by altering a screen saver message on her computer screen which read words similar to "Ginger Rogers did everything Fred Astaire did, but backwards and in high heels," to read words similar to "Ginger Rogers did everything Fred Astaire did, but on her back and in high heels." Several employees saw the message.
B. The respondent misused certain court facilities and equipment, property, or personnel for his personal use as follows:
1) During the course of his separation from his then-wife, the respondent used a Twenty-Fourth District Court cell phone to place 77 calls in an attempt to reach his then-wife between 6:46 p.m. and 9:10 p.m. on February 9, 2000, 29 calls in an attempt to reach her between 10:46 a.m. and 1:33 p.m. on February 10, 2000, 33 calls in an attempt to reach her between 9:06 am. and 5:53 p.m. on February 12, 2000, and three calls in an attempt to reach her on February 15, 2000, including one at 3:25 a.m.;
2) Although he may have timely acknowledged the debt due to the court for the cost of these telephone calls, the respondent did not reimburse the court for his personal use of the court telephone until November 2000, after he received a letter of preliminary inquiry from the Commission; and *407 3) During his 1998 campaign to retain judicial office, the respondent improperly used court equipment, supplies, and personnel for purposes related solely to his campaign, for which he has reimbursed the court for some, though possibly not all, of what he improperly used.
C. On April 8, 1998, the respondent engaged in a verbal confrontation with the manager of the Star Theatre in Taylor, Michigan, identified himself as a district court judge, and was uncooperative when he was asked to leave. The respondent was cooperative with the ranking officer who was summoned by the manager, however, but he was argumentative with the subordinate officer on the scene.
D. The respondent purchased a used white Corvette convertible that he drove for approximately two weeks in November 2000, without displaying the temporary paper license plates.
4. The respondent's conduct as admitted and described above constitutes:
A. Misconduct in office as defined by Const. 1963, Art. 6, § 30 and MCR 9.205;
B. Conduct clearly prejudicial to the administration of justice as defined by Const. 1963, art. 6, § 30 and MCR 9.205(E);
C. Failure to observe high standards of conduct so that the integrity and independence of the judiciary is preserved, as described in Canon 1 of the Michigan Code of Judicial Conduct;
D. Conduct involving impropriety and the appearance of impropriety which erodes public confidence in the judiciary, contrary to Canon 2A of the Michigan Code of Judicial Conduct;
E. Failure to respect and observe the law and to conduct oneself at all times in a manner that promotes public confidence in the integrity of the judiciary, contrary to Canon 2B of the Michigan Code of Judicial Conduct;
F. Allowing social or other relationships to influence judicial conduct or judgment in violation of the Canon 2C of the Michigan Code of Judicial Conduct;
G. Failure to diligently discharge administrative responsibilities in violation of Canon 3B(1) of the Michigan Code of Judicial Conduct; and
H. Conduct violating MCR 9.104 in that it is prejudicial to the administration of justice, contrary to MCR 9.104[(A)](1); exposes the legal profession or courts to obloquy, contempt, censure or reproach, contrary to MCR 9.104[(A)](2), and violates standards or rules of professional responsibility adopted by the Supreme Court, contrary to MCR 9.104[(A)](4).
5. In addition to the acts of misconduct described above and admitted to by the respondent, there is credible evidence supporting numerous other allegations of misconduct, including (a) sexual harassment of court employees and others, (b) misuse of court time, personnel, facilities, and other resources, (c) failure to treat employees fairly and with courtesy and respect, (d) failure to discharge administrative duties diligently and professionally, and (e) hostile and aggressive conduct off the bench.
As we conduct our de novo review of this matter, we recall the criteria *408 stated in In re Brown, 461 Mich. 1291, 1292-1293, 625 N.W.2d 744 (1999):
"[E]verything else being equal:
"(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
"(2) misconduct on the bench is usually more serious than the same misconduct off the bench;
"(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
"(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
"(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
"(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
"(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.
"The JTC should consider these and other appropriate standards that it may develop in its expertise, when it offers its recommendations."
Applying those criteria to the present case, while mindful of the agreement between the Commission and the respondent, we accept the recommendation of the Commission and order the following discipline:
We publicly censure the respondent judge and suspend him, without pay, from the performance of his judicial duties for a period of ninety days, effective the next business day following entry of the order.
In addition, we observe that the recommendation of the Commission is premised in part on the respondent's acceptance of five additional provisions, which have been agreed upon by the Commission and the respondent, as set forth below. These are not encompassed within our order, since they are not judicial discipline as described in Const. 1963, art. 6, § 30(2). However, in accordance with rules governing judicial discipline, the Commission may recommend further discipline if the respondent fails to comply with these terms:
(1) Satisfactory completion of a probation of 21 months, effective as of his return to the bench on a full-time basis, to ensure compliance with these terms;
(2) Acceptance of monitoring for the balance of his current term, i.e., through December 31, 2004. The respondent will submit video or audio tapes of every day's proceedings at the request of the Commission;
(3) Counseling and/or assistance with anger management, as determined appropriate by a mental health care professional of the respondent's choice, licensed as such by the State of Michigan, for the remainder of his term as judge, i.e., until December 31, 2004, or until he is released by the mental health care professional, in which case the mental health care professional will provide a letter to the Commission expressing *409 his/her opinion that the respondent no longer needs treatment. By agreeing to the imposition of discipline pursuant to this Decision and Recommendation, the respondent also agrees that any such letter opining that the respondent no longer needs treatment shall be included in the public file in this matter. The therapy will occur on a schedule as determined appropriate by the health care professional, who shall provide the Commission with quarterly reports detailing the respondent's attendance at those sessions. The respondent will request the mental health care provider in writing to convey that information to the Commission and will provide the Commission with a copy of that request.
(4) Resignation as chief judge of the 24th District Court, which has already occurred, and agreement never to seek to serve as chief judge of that court again; and
(5) Educational training in sexual/racial/gender sensitivity.
For the reasons set forth in this order, we ORDER that the Honorable Gerard Trudel, Judge of the Twenty-Fourth District Court, be publicly censured. This order stands as our censure. We further ORDER that the Honorable Gerard Trudel, Judge of the Twenty-Fourth District Court, be suspended, without pay, from the performance of his judicial duties for a period of ninety days, effective the next business day following entry of the order.